**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLIANCE OF NONPROFITS FOR INSURANCE, RISK RETENTION GROUP, | CIVIL ACTION |
| Plaintiff, | Case No. |
| v. | |
| BETHANNA FOUNDATION, LLC, JUSTIN SERDIKOFF, and JOSEPH SERDIKOFF, | |
| Defendants. | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Alliance of Nonprofits for Insurance, Risk Retention Group ("ANI") by and through its counsel, Houston Harbaugh, P.C., files the following Complaint for Declaratory Judgment.

**Nature of the Action**

1. This is an action to obtain a judicial determination and declaration pursuant to 28 U.S.C. §§ 2201 and 2202 regarding the parties' rights and obligations under the insurance policy issued by ANI to Bethanna Foundation, LLC ("Bethanna") with respect to the lawsuit filed by Justin and Joseph Serdikoff in the Court of Common Pleas of Philadelphia County captioned *Justin Serdikoff and Joseph Serdikoff v. Bethanna Foundation, LLC et al,* docket number 260300886 (the "Underlying Lawsuit").

2. Specifically, ANI seeks a declaration that: (a) the Improper Sexual Conduct ("ISC") coverage part of the policy provides coverage for Bethanna for the Underlying Lawsuit; (b) there is no coverage for the Underlying Lawsuit under the Commercial General Liability ("CGL") coverage part of the policy; and (c) there is no coverage for the Lawsuit under the Social Services Professional Liability ("SSPL") coverage part of the policy.

**The Parties**

3. Plaintiff ANI is organized pursuant to the Federal Liability Risk Retention Act as a public benefit corporation under the Vermont Non-Profit Corporations Act and licensed as a Vermont captive insurance company with tax-exempt status under Section 501(c)(3) of the Internal Revenue Code. ANI is owned by its members, which are all 501(c)(3) non-profit organizations. ANI's principal place of business is located at 300 Panetta Avenue, Santa Cruz, California 95060. At all relevant times, ANI conducted business in the State of Pennsylvania.

4. Defendant Bethanna is a nonprofit corporation incorporated under the laws of Pennsylvania with a principal place of business located at 1030 2nd Street Pike, Southampton, PA 18966.

5. Defendant Justin Serdikoff is an adult individual residing at 199 Justice Drive, Newton, Pennsylvania.

6. Defendant Joseph Serdikoff is an adult individual residing at 199 Justice Drive Newton, Pennsylvania.

**Jurisdiction and Venue**

7. This Court has authority to declare the rights of ANI under 28 U.S.C. §§ 2201 and 2022.

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1), as complete diversity exists among the parties, and the amount in controversy exceeds $75,000.00.

9. Venue is proper in the Eastern District of Pennsylvania as the defendant resides in this district, and the events giving rise to ANI's claims occurred in this district. *See* 28 U.S.C. § 1391(b).

**The Underlying Lawsuit**

10. Justin and Joseph Serdikoff filed a Complaint in the Underlying Lawsuit against Bethanna, the City of Philadelphia, the School District of Philadelphia, Andrea Lawrence ("Lawrence"), and Ebony Rorie ("Rorie"). A true and correct copy of the complaint in the Underlying Lawsuit ("Complaint") is attached hereto as **Exhibit 1.**

11. The Complaint alleges that Justin and Joseph Serdikoff were subject to over a decade of forced involuntary servitude, starvation, beatings, psychological, physical, and sexual abuse. (Ex. 1 ¶ 2).

12. The Complaint alleges that Justin and Joseph were declared dependent children, along with their two older brothers and their sister some time in or about 2011. (Id. ¶ 20).

13. The Complaint alleges that Bethanna, a private foster care and adoption agency, was contracted by the City to perform foster placement, supervision, licensing, and monitoring functions. (Id. ¶ 15).

14. The Complaint alleges that in 2013, Bethanna sought placement of the five Farnsworth/Clark children with an adoptive family. (Id. ¶ 22).

15. The Complaint alleges that Lawrence was the foster parent for Justin and Joseph and their sister from 2011 going forward. (Id. ¶ 23).

16. The Complaint alleges that in 2013, Bethanna social workers contacted Allen and Heather Serdikoff to gauge their interest in adopting the boys and their sister. (Id. ¶ 25). Bethanna was also responsible for placing the two older brothers of Justin, Joseph, and their sister. (Id. ¶ 27).

17. The Complaint alleges that the Serdikoffs agreed to be considered for adoptive parents of Justin, Joseph, and their sister. (Id. ¶ 26).

18. The Complaint alleges that Bethanna staff abruptly directed the Serdikoffs to the two older brothers rather than Justin, Joseph, and their sister, and that Justin, Joseph, and their sister were instead placed with Lawrence. (Id. ¶¶ 28-29).

19. The Complaint alleges that the Serdikoffs inquired about the placement of the other children with Bethanna employee Steven Dehais, who stated to them that during pre-adoptive screening and placement Lawrence stated, “I don’t want the boys. I only want the girl.” (Id. ¶ 33-34).

20. The Complaint alleges that Bethanna informed Lawrence that she would only be permitted to adopt all three children (Justin, Joseph, and their sister), not just the girl. (Id. ¶ 35).

21. The Complaint alleges that rather than relinquish the children to a home where the parents had a desire to care for and love all three children, Lawrence told Bethanna that she would take all three children so that she could keep the female child. (Id. ¶ 26).

22. The Complaint alleges that Donnell Reid and Aundray Stewart-Webb of Bethanna and defendant Rorie, a social worker with the City of Philadelphia, ignored this obvious signal that Lawrence was not interested in caring for Justin or Joseph but that they nevertheless approved Lawrence as an adoptive parent in the summer of 2014. (Id. ¶¶ 37-38).

23. The Complaint alleges that during the timeframe that Justin, Joseph, and their sister resided with Lawrence before adoption, the social workers ignored red flags and her financial motivation for having three adopted children in her home, which provided her with an extra 50% of her salary. (Id. ¶ 39).

24. The Complaint alleges that Justin and Joseph initially were toddlers in Lawrence’s custody, but as the boys moved to adolescence, she began to physically abuse them. (Id. ¶ 46).

25. The Complaint alleges that the abuse described in the complaint took place "during the time the boys lived with Defendant Andrea Lawrence from 2011 to 2022." (Id. ¶ 47).

26. The Complaint alleges that Lawrence routinely beat the Plaintiffs using sticks, hangers, and other objects, used starvation as a method of discipline, only let the boys use the "white bathroom" which was kept in an unsanitary condition, and openly said that the boys would eat the food that "white trash" ate. (Id. ¶¶ 48-57).

27. The Complaint alleges that on numerous occasions, Lawrence would get drunk and strip almost naked, place a strap-on dildo on her genital area, and dance around the boys, rubbing them with the dildo and squirting them with a water gun filled with a slippery, sticky substance. (Id. ¶ 59).

28. The Complaint alleges that during these sexual encounters, Lawrence would discuss her need for deep penetration and used the dildo on herself. (Id. ¶ 60).

29. The Complaint alleges that often after these encounters, Lawrence would force the boys to strip naked or to their underwear and throw buckets of water on them while they were in the tub of the "whites-only" bathroom, which was a frequent punishment inflicted on them. (Id. ¶¶ 61-62).

30. The Complaint alleges that after receiving allegations of abuse in July 2021, and early 2022, DHS eventually began an investigation into Lawrence and filed a Dependency Petition seeking the removal of Justin, Joseph, and other children from her custody on November 16, 2022, over a year after receiving information that they should have acted upon immediately. (Id. ¶¶ 77-79, 82-86).

31. The Complaint alleges that due to the failures of the defendants, including Bethanna, the boys endured a decade of abuse that continued even after multiple alerts in 2021 and 2022. (Id. ¶ 103).

32. The Complaint alleges that in May 2024, Lawrence's parental rights were terminated by the Court of Common Pleas, and in 2025, the boys were adopted by the Serdikoffs. (Id. ¶¶ 104, 106).

33. Count V of the Complaint, titled Negligence, is the only count directed at Bethanna. The Complaint alleges that Bethanna's negligence consisted of the following:

a. Failing to adequately screen, supervise, and/or monitor foster parents in their system;

b. Failing to properly screen Lawrence for potential for abuse of Plaintiffs;

c. Failure to properly evaluate Lawrence's stated desire not to be a foster parent for Justin and Joseph as an indicator for future mistreatment;

d. Failure to consider the Serdikoffs as foster parent resources for parents [sic] despite their intent and desire to explore adoption of Justin, Joseph, and their sister;

e. Failure to properly screen and hire staff that would properly and adequately evaluate Lawrence's statements that she only wanted the Plaintiffs' sister and would only adopt Justin and Joseph because she could not adopt their sister without them; and

f. Approving Lawrence in a cross-racial adoption where she repeatedly physically and sexually abused Justin and Joseph and subjected them to race-based punishments and abuse.

(Id. ¶ 156).

34. The Complaint alleges that as a result of Bethanna's negligence, Justin and Joseph Serdikoff suffered physical pain, severe mental and psychological pain and anguish, post-traumatic stress disorder, isolation, anxiety, stress, and other psychological impacts. (Id. ¶ 157).

35. The Complaint also alleges that as a direct and proximate result of Bethanna's negligence, Justin and Joseph were sexually abused by Lawrence. (Id. ¶ 158).

36. The Complaint seeks punitive damages, alleging that Bethanna's actions represent a deliberate indifference that shocks the conscience. (Id. ¶ 161).

**The Primary Policy**

37. ANI issued Commercial Lines Policy No. 2012-13578 to Bethanna as the named insured, effective from July 1, 2012 to July 1, 2013 (the "2012 Policy"). A true and correct certified copy of the 2012 Policy is attached hereto as **Exhibit 2**.

38. The 2012 Policy contains Commercial General Liability ("CGL") coverage form CG 00 01 07 98, which includes the following insuring agreement:

> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
>
> **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**
>
> ***
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**(2)** The "bodily injury" or "property damage" occurs during the policy period.

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

39. The CGL coverage part contains an exclusion for expected or intended injury, which states:

**2. Exclusions**

This insurance does not apply to:

**a. Expected or intended injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

***

40. The CGL coverage part contains a Designated Professional Services exclusion, which states:

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

41. The Designated Professional Services exclusion Schedule lists the following under Description of Professional Services:

Any and all professional services, except to the extent that coverage is provided by the Social Service Professional Liability Endorsement.

42. The 2012 Policy contains a Social Service Professional Liability ("SSPL") Endorsement, which states:

**SOCIAL SERVICE PROFESSIONAL LIABILITY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Except where designated below, the terms of the coverage part to which this endorsement is attached apply to the insurance provided by this endorsement.

**SECTION I – COVERAGES**

**COVERAGE S: SOCIAL SERVICE PROFESSIONAL LIABILITY**

**1. INSURING AGREEMENT**

a. We will pay those sums that the insured becomes legally obligated to pay as "damages" because of an act, error or omission committed by you to which this insurance applies.

The "damages" must arise out of an act, error or omission committed by you, a "professional service provider," or by any other person for whose act, error or omission you are legally responsible. The act, error or omission must arise out of the performance of professional services in your capacity as a social service agency. We will have the right and duty to defend any "suit" seeking those "damages." We may at our discretion investigate any claim or "suit" that may result. But:

(1) The amount we will pay for "damages" is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage S.

b. This insurance applies only to an act, error or omission in the performance of professional services that takes place in the "coverage territory" and that occurs during the time that this endorsement is in effect.

**2. ADDITIONAL EXCLUSIONS**

The following additional exclusions are applicable to the insurance provided by this endorsement. This insurance does not apply to:

***

e. Liability arising out of:

(1) Any form of sexual misconduct, including but not limited to any actual, alleged, attempted, proposed or threatened sexual abuse, molestation, erotic physical contact, or sexual harassment by anyone of any person; or

(2) The employment, investigation, supervision, reporting or failure to report to the proper authorities, or retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (1) above.

***

l. Any claim or "suit" arising out of "bodily injury," "property damage," "personal and advertising injury" which is covered under any Commercial General Liability Coverage policy to which this endorsement is attached.

43. The 2012 Policy contains an Improper Sexual Conduct exclusion that applies to the CGL coverage and the SSPL coverage parts and bars coverage for all claims and causes of action asserted in a lawsuit that also alleges any form of sexual misconduct. The Improper Sexual Conduct exclusion states:

**IMPROPER SEXUAL CONDUCT EXCLUSION**

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SOCIAL SERVICE PROFESSIONAL LIABILITY ENDORSEMENT

The insurance provided by this policy affords NO COVERAGE with respect to any claim, suit or cause of action which arises from, or is in any way related to:

A. **Any form of sexual misconduct,** including but not limited to sexual abuse, sexual molestation, sexual harassment, sexual assault, sexual battery, sexual exploitation, or sexual injury, whether actual or threatened, committed or allegedly committed by any Named Insured, insured or:

1. any Alliance of Nonprofits for Insurance, Risk Retention Group member;

2. any employee or volunteer of any Alliance of Nonprofits for Insurance, Risk Retention Group member;

3. any other person performing services for or on behalf of any Alliance of Nonprofits for Insurance, Risk Retention Group member;

4. any client, participant, service recipient, student or patient of any Alliance of Nonprofits for Insurance, Risk Retention Group member; or

5. any person relating to or in any way interacting with any Alliance of Nonprofits for Insurance, Risk Retention Group member; or

B. Employment practices concerning a person who commits or allegedly commits any of the acts cited in paragraph A above, including but not limited to hiring, reference checks, background investigation, improper or inadequate supervision or failure to suspend, discipline or terminate; or

C. Failure to report an incident of any form of sexual misconduct, including but not limited to sexual abuse, sexual molestation, sexual harassment, sexual assault, sexual battery, sexual exploitation, or sexual injury, to the proper authorities, or the withholding of pertinent information concerning same from such authorities.

This exclusion shall apply regardless of the legal form ANY claim or complaint may take and shall apply to each and every cause of action and allegation contained in a claim or complaint if ANY cause of action or allegation in that claim or complaint in ANY manner sets forth an allegation of ANY form of sexual misconduct. For example, if a claim is made or a complaint is filed against an individual or entity referred to in paragraph A above, there is NO COVERAGE for ANY individual or entity under the policy, regardless of ANY other coverage provisions that might otherwise apply.

***

44. The 2012 Policy contains an Improper Sexual Conduct Liability (“ISC”) Coverage Form, which states:

**SECTION I – COVERAGES**

BODILY INJURY ARISING FROM "IMPROPER SEXUAL CONDUCT"

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as “damages” because of "bodily injury" arising from "improper sexual conduct.” No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION III - OTHER PAYMENTS. SECTION V - LIMITS OF INSURANCE include sums paid for “damages” and other payments. The "improper sexual conduct" must take place in the "coverage territory" during the effective dates of the policy period. We will have the right and duty to defend any "suit" seeking such “damages.” But:

(1) The amount we will pay for “damages” and SECTION III - OTHER PAYMENTS is limited as described in SECTION V - LIMITS OF INSURANCE;

(2) We may, at our discretion, investigate and settle any "claim" or "suit" seeking such “damages;” and

(3) Our right and duty to defend ends when we have exhausted the applicable limit of judgments or settlements under this coverage, or of items explicitly provided for under SECTION III - OTHER PAYMENTS are included in the applicable limit of insurance.

b. All "claims" or "suits" for “damages” because of "bodily injury" arising from a single act or a series of continuous or repeated acts of "improper sexual conduct" to the same person, including “damages” claimed by any person or organization for care, loss of services, or death resulting at any time from "bodily injury" arising from "improper sexual conduct”, will be considered as having resulted from the same "improper sexual conduct" which shall be deemed to have been committed on the date of the first such act. The date of the first such act of "improper sexual conduct" must take place during the effective dates of this policy period.

***

**SECTION II – EXCLUSIONS**

***

4. This insurance does not apply to "bodily injury" arising from "improper sexual conduct" if such "improper sexual conduct" takes place prior to or after the effective dates of this policy period.

***

45. The ISC coverage part contains the following relevant definitions.

1. "Bodily Injury" means bodily injury, sickness or disease including emotional distress or anguish sustained by a person, including death resulting from "improper sexual conduct".

2. "Claim" or "Claims" means any demand or "suit" against any insured which seeks “damages” for "bodily injury" arising from "improper sexual conduct.” It is understood that the "claim" or "claims" must result from "improper sexual conduct" that takes place during the effective dates of the policy period.

***

4. "Damages" means the monetary portion of any judgment, award or settlement to which we have consented, but does not include: (1) civil or criminal fines or penalties; (2) punitive or exemplary damages; (3) the multiple portion of multiplied damages; (4) any amount uninsurable under the law pursuant to which this coverage shall be construed; (5) costs of complying with equitable relief, including but not limited to, injunctions, restraining orders or restitution.

5. "Improper Sexual Conduct" means actual, attempted, or alleged unlawful sexual conduct by one person or two or more persons acting in concert as prohibited by federal or state law.

***

8. "Suit" means a civil proceeding, including any appeal there from, in which “damages” because of "bodily injury" arising from "improper sexual conduct" to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such “damages” to which you must submit or submit with consent. "Suit" does not include any criminal action or proceeding.

***

46. ANI is currently defending Bethanna against the Underlying Lawsuit under the ISC coverage part of the 2012 Policy pursuant to a reservation of rights.

## The Umbrella Policy

47. ANI issued Commercial Umbrella Policy No. 2012-13578-UMB to Bethanna as the named insured, effective from July 1, 2012 to July 1, 2013 (the "Umbrella Policy"). A true and correct certified copy of the 2012 Umbrella Policy is attached hereto as **Exhibit 3**.

48. Schedule A – Schedule of Underlying Insurance of the Umbrella Policy lists the 2012 Policy as the underlying insurance with respect to automobile liability and business auto coverage, commercial general liability coverage, and social service professional liability coverage, and a policy issued by Zurich American Insurance Company with respect to standard workers compensation and employers liability coverage.

49. The Umbrella Policy excludes coverage for Directors' & Officers' Liability and Improper Sexual Conduct Liability, as reflected on the Declarations Page:

| | | | |
|---|---|---|---|
| Item 4 | LIMITS OF INSURANCE: | | |
| | a. | Each Occurrence (other than Directors' & Officers' Liability and Improper Sexual Conduct Liability) | 5,000,000 |
| | | Each Wrongful Act - Directors' & Officers' Liability | Excluded |
| | | Each Occurrence - Improper Sexual Conduct Liability | Excluded |
| | b. | Products Completed Operations Aggregate [(where applicable)] | 5,000,000 |
| | c. | General Aggregate | 5,000,000 |
| | d. | Aggregate Directors' & Officers' Liability | Excluded |
| | e. | Aggregate Improper Sexual Conduct Liability | Excluded |
| | f. | Retained Limit | 10,000 |
| Item 5 | RETROACTIVE DATES - SEE SCHEDULE OF UNDERLYING INSURANCE | | |

50. The Umbrella Policy contains the following insuring agreements:

**I. INSURING AGREEMENTS**

We, the Company, in return for the payment of the premium, agree with you as follows:

A. Coverage A – Excess Liability Insurance (Following Form) Coverage A is excess insurance and follows the underlying insurance except as otherwise stated in this policy. We will pay, on behalf of the **insured** , sums in excess of the amount payable under the terms of any Underlying Insurance as stated in the Schedule of Underlying Insurance, that the **insured** becomes legally obligated to pay as

damages because of injury or damage to which this insurance applies.

Coverage A is subject to the same terms, conditions, warranties, agreements, exclusions and definitions as the Underlying Insurance except as otherwise provided in this policy; provided, however, that in no event will this insurance apply unless the Underlying Insurance applies or would apply but for the exhaustion of its applicable Limit of Liability.

B. Coverage B -- Umbrella Occurrence Based Liability Coverage Over Retained Limit

Coverage B is excess insurance over a self-insured retention. Coverage B applies only to exposures which are not covered by Coverage A and are not otherwise excluded by this policy or any of the underlying policies.

We will pay, on behalf of the **insured,** damages with respect to liability for loss in excess of the Retained Limit as specified in Item 4(d) of the Declarations, or the amount payable by any **other insurance,** whichever is greater, up to the applicable Limits of Insurance shown in the Declarations when liability is imposed on the **insured** by law or when liability is assumed by the **insured** under an **insured contract** because of:

1. **bodily injury or property damage** which occurs during the **Policy Period** and is caused by an **occurrence;** and

2. **personal injury or advertising injury** to which this coverage applies, caused by an **occurrence** committed during the **Policy Period**.

Coverage B will NOT apply to any loss for which insurance is afforded under Coverage A or which arises out of subjects of insurance or exposures to loss for which Underlying Policies are required to be maintained under Section V - CONDITIONS, I. MAINTENANCE OF SCHEDULED UNDERLYING INSURANCE.

***

51. The Umbrella Policy contains the following relevant exclusions:

IV. EXCLUSIONS

Each and every exclusion applicable to the Underlying Insurance also applies to this insurance. Additionally, the following exclusions apply under:

***

B. UNDER COVERAGE A (EXCESS LIABILITY INSURANCE)

In addition to the exclusions in Section A. above, this policy does not apply under Coverage A to:

Any loss not covered by the underlying insurance, and all exclusions now or hereafter contained in the underlying insurance, apply to Coverage A with the same force and effect.

C. UNDER COVERAGE B (UMBRELLA LIABILITY INSURANCE)

In addition to the exclusions in Sections A and B above, this insurance does not apply under Coverage B to:

1. Any injury or damage:

   a. Covered under Coverage A; . . . .

***

12. Services: Fiduciary or Professional

   To liability arising out of:

   a. The performance of or failure to perform any fiduciary duty or services; or
   b. The rendering of or failure to render any professional service, in whatever form, by or on behalf of any **insured.**

***

17. Coverage A Exclusion

   Any liability arising out of any **occurrence** with respect to which any coverage for any other liability, injury or damage is provided by any Underlying Insurance shown in the Schedule of Underlying Insurance.

***

**Count I**

**No Duty to Defend or Indemnify – CGL Coverage Part**

52. ANI incorporates by reference the allegations of Paragraphs 1 through 51 above, as if set forth fully and completely herein.

53. The CGL coverage part contains a Designated Professional Services exclusion which excludes coverage for "'bodily injury' . . . due to the rendering of or failure to render any professional service."

54. The Complaint alleges that Bethanna was negligent in its provision of placement services to Justin and Joseph Serdikoff, allegedly while acting in the course of its contract with the City to perform foster and adoption services and that this negligence resulted in them being abused by defendant Lawrence. (Ex. 1, ¶¶ 165, 157-158).

55. Accordingly, coverage is precluded by operation of the Designated Professional Services exclusion contained in the CGL coverage part.

56. The CGL coverage part includes the Improper Sexual Conduct exclusion, which bars coverage for "any claim, suit or cause of action which arises from, or is in any way related to . . . Any form of sexual misconduct . . . committed or allegedly committed by. . . . any person relating to or in any way interacting with any ANI member." The Improper Sexual Conduct exclusion applies "regardless of the legal form ANY claim or complaint may take and shall apply to each and every cause of action and allegation contained in a claim or complaint if ANY cause of action or allegation in that claim or complaint in ANY manner sets forth an allegation of ANY form of sexual misconduct."

57. The Complaint alleges that Defendant Lawrence sexually abused Justin and Joseph Serdikoff. (*See* Ex. 1, ¶ 158).

58. Accordingly, there is no coverage under the CGL coverage part by operation of the Improper Sexual Conduct exclusion.

WHEREFORE, ANI seeks a declaration that it owes no duty under the CGL coverage part of the 2012 Policy to defend or indemnify Bethanna in connection with the claims asserted against it in the Underlying Lawsuit.

**Count II**

**No Duty to Defend or Indemnify – SSPL Coverage Part**

59. ANI incorporates by reference the allegations of Paragraphs 1 through 58 above, as if set forth fully and completely herein.

60. The SSPL coverage part provides coverage for "those sums that an insured becomes legally obligated to pay as 'damages' because of an act, error, or omission committed by you to which this insurance applies. . . The act must arise out of the performance of professional services in your capacity as a social services agency."

61. The Improper Sexual Conduct exclusion, which bars coverage for "any claim, suit or cause of action which arises from, or is in any way related to . . . Any form of sexual misconduct . . . committed or allegedly committed by . . . any person relating to or in any way interacting with any ANI member" applies to the SSPL coverage part as well as the CGL coverage part. The Improper Sexual Conduct exclusion applies "regardless of the legal form ANY claim or complaint may take and shall apply to each and every cause of action and allegation contained in a claim or complaint if ANY cause of action or allegation in that claim or complaint in ANY manner sets forth an allegation of ANY form of sexual misconduct."

62. The Complaint alleges that Defendant Lawrence sexually abused Justin and Joseph Serdikoff. (*See* Ex. I, ¶ 158).

63. Accordingly, there is no coverage under the SSPL coverage part by operation of the Improper Sexual Conduct exclusion.

WHEREFORE, ANI seeks a declaration that it owes no duty under the SSPL coverage part of the 2012 Policy to defend or indemnify Bethanna in connection with the claims asserted against it in the Underlying Lawsuit.

**Count III**

**Sole Applicability – ISC Coverage Part**

64. ANI incorporates by reference the allegations of Paragraphs 1 through 63 above, as if set forth fully and completely herein.

65. The ISC coverage in the 2012 Policy specifically applies to "those sums that the insured becomes legally obligated to pay as 'damages' because of 'bodily injury' arising from 'improper sexual conduct.'"

66. The ISC coverage part provides that all "claims" or "suits" for "damages" because of "bodily injury" arising from a single act or a series of continuous or repeated acts of "improper sexual conduct" to the same person "will be considered as having resulted from the same 'improper sexual conduct' which shall be deemed to have been committed on the date of the first such act," and that "[t]he date of the first such act of 'improper sexual conduct' must take place during the effective dates of th[e] policy period."

67. Pursuant to the terms of the ISC coverage part, all "bodily injury" arising from a continuous or repeated series of acts of "improper sexual conduct" against the same person is

deemed to have been committed on the date of the first such act, and only the policy in effect on the date of that first act applies.

68. Exclusion 4 in the ISC coverage precludes coverage for "bodily injury" arising from "improper sexual conduct" that takes place prior to or after the policy period of the 2012 Policy.

69. The Underlying Lawsuit alleges that Justin and Joseph Serdikoff were sexually abused by defendant Lawrence as a result of Bethanna placing them in the Lawrence home.

70. The Underlying Lawsuit alleges that Defendant Lawrence was the foster parent for Justin and Joseph Serdikoff and their sister from 2011 going forward and that Justin and Joseph were subjected to abuse "during the time they lived with Defendant Andrea Lawrence from 2011 to 2022." (Ex. 1, ¶¶ 23, 47)

71. Because the Underlying Lawsuit alleges that Justin and Joseph Serdikoff were sexually abused, only the ISC coverage part of the 2012 Policy is potentially applicable to the Underlying Lawsuit, subject to its terms, conditions, limitations, and provisions.

72. To the extent the first act of improper sexual conduct against either Justin or Joseph Serdikoff occurred before July 1, 2012 or after July 1, 2013, such conduct would not be deemed to have occurred during the policy period of the 2012 Policy.

73. To the extent the first act of improper sexual conduct against either Justin or Joseph Serdikoff occurred before July 1, 2012 or after July 1, 2013, coverage for such conduct is precluded by Exclusion 4 in the ISC coverage part.

74. To the extent the date of the first act of improper sexual conduct against either Justin or Joseph Serdikoff occurred outside the policy period of the 2012 Policy, ANI has no obligation to indemnify Bethanna for the Underlying Lawsuit under the 2012 Policy.

WHEREFORE, ANI seeks a declaration that the ISC coverage is the only coverage part of the 2012 Policy that is potentially applicable to the claims asserted against Bethanna in the Underlying Lawsuit.

**COUNT IV**

**No Duty to Defend or Indemnify Under the Umbrella Policy**

75. ANI incorporates by reference the allegations of Paragraphs 1 through 74 above, as if set forth fully and completely herein.

76. Coverage A under the Umbrella Policy is follow form and provides excess coverage over that available under the identified Underlying Insurance, subject to same terms, conditions, warranties, agreements, exclusions, and definitions as the Underlying Insurance except as otherwise provided in this policy.

77. The insuring agreement for Coverage A of the Umbrella Policy specifically states that that "in no event will this insurance apply unless the Underlying Insurance applies or would apply but for the exhaustion of its applicable Limit of Liability."

78. Coverage B of the Umbrella Policy provides coverage only for exposures that are not covered by Coverage A and are not otherwise excluded by the Umbrella Policy or any of the underlying policies.

79. As set forth above, the CGL coverage part and the SSPL coverage part of the 2012 Policy exclude coverage for "any claim, suit or cause of action which arises from, or is in any way related to . . . Any form of sexual misconduct . . . committed or allegedly committed by . . . any person relating to or in any way interacting with any ANI member."

80. Although the 2012 Policy contains an ISC coverage part, such coverage is specifically not included as Underlying Insurance in the Umbrella Policy.

81. The Underlying Lawsuit alleges that Justin and Joseph Serdikoff were sexually abused.

82. Since Coverage A follows form to the underlying policy including any exclusions and Coverage B of the Umbrella Policy exclude coverage for claims that are excluded by the underlying coverage, which excludes coverage for improper sexual conduct under the CGL And SSPL coverage parts, and the Umbrella Policy specifically excludes coverage for improper sexual conduct, there is no coverage available under the Umbrella Policy for the Underlying Lawsuit.

WHEREFORE, ANI seeks a declaration that it owes no duty under the Umbrella Policy to defend or indemnify Bethanna in connection with the claims asserted against it in the Underlying Lawsuit.

**Prayer for Relief**

Plaintiff ANI respectfully requests that this Honorable Court enter judgment in its favor and declare the following:

a.) There is no coverage for the Underlying Lawsuit under the CGL coverage part of the 2012 Policy;

b.) ANI has no duty to defend or indemnify Bethanna under the CGL coverage part of the 2012 Policy in connection with the claims asserted against it in the Underlying Lawsuit;

c.) There is no coverage for the Underlying Lawsuit under the SSPL coverage part of the 2012 Policy;

d.) ANI has no duty to defend or indemnify Bethanna under the SSPL coverage part of the 2012 Policy in connection with the claims asserted against it in the Underlying Lawsuit;

e.) The ISC coverage is the only coverage part of the 2012 Policy that is potentially applicable to the claims asserted against Bethanna in the Underlying Lawsuit;

f.) ANI has no duty to indemnify Bethanna under the ISC coverage part of the 2012 Policy to the extent the first act of improper sexual conduct occurred or is deemed to have occurred prior to or after the 2012 Policy's effective dates;

g.) To the extent that Bethanna is found liable in the Underlying Lawsuit, coverage for indemnification exists only under the Policy in effect at the time of the first act of improper sexual conduct;

h.) There is no coverage for the Underlying Lawsuit under the Umbrella Policy;

i.) ANI has no duty to defend and no duty to indemnify Bethanna under the Umbrella Policy.

Dated: November 23, 2026

Respectfully submitted,

HOUSTON HARBAUGH, P.C.

By: */s/ Christopher M. Jacobs*

Christopher M. Jacobs, Esq.
PA I.D. No. 89092
jacobscm@hh-law.com
Lisa R. Whisler, Esq.
PA I.D. No. 312032
whislerlr@hh-law.com
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA 15222
412-281-5060
**(*Attorneys for Plaintiff*)**